## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LANCE L. ANNICELLI,

*Plaintiff*,

v.

FRANK KENDALL, III,
Secretary of the Air Force,

*Defendant*.

Civil Action No. 1:20-cv-02647 (CJN)

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant's Motion for Summary Judgment, ECF No. 13, and Plaintiff's Cross-Motion for Summary Judgment, ECF No.14.

### Background

Lieutenant Colonel Lance Annicelli joined the Air Force directly out of high school and, with a few years off for college and a brief stint in the Navy, spent more than twenty-five years serving this country.  AR10–11; AR185–86; AR250; AR1286.  His career was largely marked by excellence—he was repeatedly promoted, received top ratings for his performance, and was hand-selected for special assignments.  *See* AR1205–40.

In June 2014, Annicelli was given command of the 9th Physiological Support Squadron.  AR186.  He soon identified morale and climate issues within the Squadron, which he began to address by requesting assistance from his superiors and planning new initiatives.  *See* AR40–41; AR408; AR409; AR410–11; AR422; AR547–48; AR708–99.  Fair or unfair, Annicelli's leadership drew complaints.  In August 2014 his leadership tactics were called "intimidating" and in October an Organizational Climate Survey reported "concern in leadership conduct and unit

1

morale." AR111. And in February 2015, there were additional complaints regarding "commander conduct." AR111.

On February 12 or 13, 2015, Colonel Ocker—Annicelli's direct supervisor and "Rater" for performance reviews—informed him that she was "temporarily" relieving him of command following an "egregious" allegation of "toxic leadership," pending an investigation. AR3; AR45–46. That day, Colonel Lee—Ocker's supervisor and Annicelli's "Additional Rater" for performance reviews—told members of the Squadron that Annicelli was removed from command due to "toxic leadership." AR46. The next day, Lee told Annicelli he had decided to permanently remove him from command notwithstanding the pending investigation. AR65–66; AR620.

Ocker appointed an Investigating Officer to conduct a Commander-Directed Investigation into "all aspects of allegations regarding toxic leadership by" Annicelli. AR109, AR111. The investigation was conducted February 12 through 27, 2015. In conducting the investigation, the Investigating Officer defined "toxic leaders" as those who do the inverse of the conduct and responsibility expected of commanders as set forth in Air Force Instruction 1–2, *Commander's Responsibilities*, May 8, 2014. AR111–12. The Investigating Officer conducted short interviews with 29 members of the Squadron and received written statements from those interviewed as well as a few others, including Annicelli. AR112–13; AR114; AR121–29; AR929–1012. The Investigating Officer did not inform Annicelli of the definition of "toxic leadership" guiding the investigation or of any specific allegations of misconduct. AR111. As a result, Annicelli had to speculate as to which of his command decisions could be under scrutiny and respond as best as he could. AR121–26.

The Investigating Officer concluded that not all of the problems in the squadron were attributable to Annicelli and his "overall intent was good." AR116; AR119. Nonetheless, the

Investigating Officer found evidence that Annicelli did not exhibit the traits expected of Air Force commanders, but the inverse of those traits. AR116–18. Relying on the witness statements, the Investigating Officer concluded that Squadron morale was low and that Annicelli did not treat Squadron members with dignity, abused his subordinates' time, was unapproachable, created a lack of trust, and was feared by members of the Squadron. AR116–18. The Officer found that:

> The preponderance of evidence shows [Annicelli] was not trusted, was believed to be vindictive, and lowered morale through his actions. Further, he demonstrated he did not respect the time of his personnel. While I believe [Annicelli's] intent was to increase mission effectiveness through enforcement of high standards, he failed to gain and maintain "buy in" from his leadership team, appeared to allow disagreements and personnel issues to become personal, and ultimately lost the faith of his squadron; therefore I conclude this allegation of toxic leadership is **SUBSTANTIATED**.

AR119 (emphasis original).

The Investigating Officer recommended Annicelli not be reinstated to command. AR120. The Officer found that although none of Annicelli's actions were "clearly illegal, immoral, or unethical . . . his removal from command was warranted because so many members[] believed he was unapproachable and no longer credible. Over time, those feelings could lead to significant mission degradation." AR119.

On March 15, 2015, Annicelli received a "Do Not Promote" recommendation "[d]ue to lost faith and confidence in his ability to lead." AR182. On May 5, 2015, Annicelli received an adverse Officer Performance Report for the period of May 2, 2014 through May 1, 2015. After listing some of Annicelli's successes as Commander, the Report stated that he was "Relieved of Command; CDI [Commander-Directed Investigation] substantiated toxic leadership; unhealthy org'l climate degraded unit effectiveness." AR170. The Report also marked that Annicelli "does not meet standards" for Leadership Skills. AR171. On or around May 21, 2015, Annicelli submitted a written rebuttal to the Officer Performance Report alleging the investigation was

"factually and legally flawed" and detailing his positive efforts as Squadron Commander. AR172–77. Ocker declined to make changes to the Report.

On May 10 or 11, 2015 (before the written rebuttal) Annicelli submitted a request for redress to Ocker. AR352–92. Annicelli argued that Ocker's decision to remove him from command was "arbitrary and capricious" and "clearly unfair" for numerous reasons. AR353–55. He requested reinstatement as the Squadron Commander or, in the alternative, to be allowed to retire as a graduate Commander, along with a retraction of the allegation of toxic leadership and correction of the associated records. AR380. On May 28, 2015, after reviewing the Report and evidence, Ocker noted that 24 of the 31 witnesses were negative towards Annicelli's leadership and concluded that he "never developed the art of command" as evidenced by the lack of trust and confidence of those he commanded. AR303–06. Ocker denied the request for redress, concluding that reinstatement would have a detrimental effect on the squadron and that Annicelli was not eligible for retirement as a commander or for the elimination of his referral Officer Performance Report. AR306.

On May 15, 2015, Annicelli submitted a similar request for redress to Lee. AR307–39. On June 1, 2015, Lee denied the request, emphasizing that Annicelli possessed "authoritarian type leadership" and citing similar evidence to what Ocker cited. AR300–02. Lee additionally observed that under Annicelli's leadership, the Squadron lacked a "healthy climate," and that Annicelli's leadership "presented a safety problem for the pilots, aircrew, and other Airmen who relied on the life support systems the [Squadron] is entrusted to maintain." AR302. Lee denied Annicelli's request for redress, noting that Lee "fully supported the course of action and your removal from command for loss of confidence." AR302.

On June 22, 2015, Annicelli submitted a similar request for redress to Major General John Shanahan, Commander of the 25th Air Force, and the General Court-Martial Convening Authority. *See* AR273–92 (later supplemented by AR255–72). Annicelli noted that he still had not been provided the witness statements underlying the Commander-Directed Investigation's factual findings. AR279. On July 27, 2015, Shanahan characterized Annicelli's complaints as (1) having never been informed of the specific allegations made to Ocker that led to the investigation and (2) the investigation was neither factually or legally sufficient to provide Ocker with a basis for removal. AR254. Shanahan denied the requested relief, finding that Ocker "did not abuse her authority or act arbitrarily, capriciously, or unfairly in removing" Annicelli, and that she "acted reasonably . . . based on her loss in confidence in [Annicelli's] ability to safely command the unit." AR254. Shanahan also concluded that Lee did not wrong Annicelli by allowing Ocker to remove him. AR254.

By operation of Air Force procedures, Shanahan's decision was forwarded to the Administrative Law Directorate within the Air Force Judge Advocate General Corps for Secretarial Review. AR254. While review was pending, Annicelli voluntarily retired on August 31, 2015. AR250. On November 16, 2015, the Director concurred in Shanahan's denial, stating:

> By authority of the Secretary of the Air Force, I have reviewed all matters submitted by you in your request for redress filed under Art 138, Uniform Code of Military Justice (UCMJ), dated 22 June 2015. I have determined that the actions taken in this matter by the Commander, 9th Medical Group [Ocker] and the Commander, 9th Reconnaissance Wing [Lee] were appropriate. The denial of your request for redress is hereby sustained.

AR253.

On March 22, 2016, Annicelli filed a FOIA suit seeking the release of the witness statements used in the Commander-Directed Investigation. AR549–66. In July and August, the agency released redacted versions of those statements. *See* AR929–1012.

Case 1:20-cv-02647-CJN   Document 20   Filed 03/30/22   Page 6 of 27

On August 17, 2017, Annicelli applied for a correction of the military records. AR7–8; AR9–1129. The Secretary of the Air Force is authorized to modify military records "when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552; *see McDonough v. Stackley*, 245 F. Supp. 3d 1, 4 (D.D.C. 2017). The Air Force does this through the Air Force Board of Corrections of Military Records (the "Board"), a board of civilians who have wide latitude to correct military records and to fashion remedies for former servicemembers. 32 C.F.R. §§ 865.0–865.8. The Board is not itself an investigative body, but considers applications based primarily on the evidence of record, 32 C.F.R. § 865.2(c), though it may receive additional information from an Air Force organization or official, *id.* at § 865.4(a)(1). Applicants are given an opportunity to review and comment on any advisory opinions and additional information obtained by the Board. 32 C.F.R. § 865.4(b). Ultimately, the applicant bears "the burden of providing sufficient evidence of material error or injustice." 32 C.F.R. § 865.4(a).

In his application, Annicelli sought correction of (1) the adverse referral Officer Performance Report; (2) the adverse Promotion Recommendation Form; and (3) all records showing his retirement from active duty on August 31, 2015. AR18–19. Annicelli's application was accompanied by newly acquired evidence, including statements from individuals with direct knowledge of events regarding his removal and the investigation. *See* AR9; AR65–92. Annicelli also analyzed the witness statements on which the Commander-Directed Investigation relied and encouraged the Board to review the witness statements themselves. *See* AR46–51 (citing the witness statements at AR929–1012). In brief, Annicelli's application made two types of arguments: (1) that his removal and the Commander-Directed Investigation were improper for a

variety of reasons;[1] and (2) the Officer's Performance Report—which referenced the investigation's report—was also factually flawed and inconsistent with Air Force regulations. *See* AR29–37; AFI 36–2406, *Officer and Enlisted Evaluation Systems* (Apr. 5, 2013) (Def.'s Ex. 2, ECF No. 13-4).

The Board sought advisory opinions from the Headquarters Air Force Personnel Center. The first, from the Military Evaluations, Promotions, and Recognitions Operations Branch, dated June 18, 2018, evaluated Annicelli's request to have his Officer Performance Report voided, his Promotion Recommendation Form replaced, and consideration by a Special Selection Board for promotion to Colonel. AR1386–87 (referred to throughout the record as the "DP2SP Advisory Opinion"). This opinion recommended denying these requests because Annicelli had never been entitled to his proposed remedy while on active duty and had rendered himself ineligible for promotion when he voluntarily retired from active duty. AR1386–87. The opinion also asserted as a basis for denial that Annicelli had not exhausted all administrative remedies because he did not file an appeal with the Evaluation Reports Appeals Board. AR1386.

---

[1] Specifically, Annicelli argued his removal was a "rush to judgment" made before a real investigation, AR19–20, as well as a number of arguments about the insufficiency of the investigation. AR21–29. For example, he argued that the Commander-Directed Investigation suffered from inappropriate command influence because Lee publicly labeled Annicelli a "toxic leader" before the investigation got underway, AR23; the chief complainant was unreliable because of a history of insubordination, AR23–24; the investigation was biased because it was led by one of Lee's subordinates and Lee had already publicly stated Annicelli was removed for toxic leadership, AR 24; Ocker had significant contact with the investigator as the investigation was ongoing, suggesting undue influence, AR24; Ocker and Lee made inconsistent statements about the investigation, suggesting it was pretextual, AR25; Annicelli was never given a chance to confront the allegations against him, AR25; the Investigating Officer used inappropriate and outdated evidence, AR26; most of the evidence was weak, including unsubstantiated opinions and rumors rather than first-hand accounts, and Annicelli had received no negative feedback prior to his removal, AR27–28; and the Investigation did not sufficiently weigh mitigating factors, like that Annicelli was not the cause of the squadron's problems, was well-intentioned, had some buy-in from his Squadron, and had no particular unethical or abusive conduct, AR28–29. Many of these arguments cited particular Air Force regulations that Annicelli asserts were violated.

The second advisory opinion, from the Promotions, Evaluations, and Recognitions Branch, dated March 11, 2019, contemplated Annicelli's request to void the referral Officer Performance Report and change his Promotion Recommendation Form to recommend "Definitely Promote." AR1388–90 (referred to throughout the record as the "DP3SP Advisory Opinion").  The opinion recommended denial, concluding Annicelli had not shown he was entitled to relief because, as the advisors put it, "we are unable to determine the legal sufficiency of the CDI, nor can we conclude that the applicant's removal from command was arbitrary and capricious."  AR1388–89.

Annicelli, through counsel, responded to the two opinions with various objections.  He asserted that the DP2SP Opinion was incorrect to state that he had failed to exhaust administrative remedies—he had retired before he was eligible to undertake the particular type of appeal on which the Opinion relied.  AR1393.  And he asserted that the DP3SP Opinion failed to address the "crux issues" raised in his application, namely: there was insufficient credible evidence of his "toxic leadership"; there is no definition of "toxic leadership"; and the Officer Performance Report did not reflect his top performance marks prior to 2015.  AR1393–95.  Annicelli also argued that the advisory opinions did not re-analyze the evidence, but rather regurgitated Ocker's conclusion that the Investigation substantiated the allegation of toxic leadership without any analysis.  AR1393–94.

On May 30, 2019, the Board issued a final decision on Annicelli's application and denied relief.  AR2–6.  After summarizing the record, the Board concluded that Annicelli's application was timely and had appropriately exhausted other remedies.  AR5.  The Board's substantive reasoning and conclusions consist of a single paragraph:

> After reviewing all Exhibits, the Board concludes the applicant is not the victim of an error or injustice.  The Board concurs with the rationale and recommendation of AFPC/DP3SP [the Second Advisory Opinion] and finds a preponderance of the evidence does not substantiate the applicant's contentions.  The Board notes the 5

> Apr 19 rebuttal letter contending the applicant presented substantial evidence of material errors and injustice, and that the AFPC/DP3SP advisory opinion failed to undermine the bases for the relief requested. However, the Board also notes, and agrees with the 25th AF/CC, and USAF/JAA, 27 Jul 15 and 16 Nov 15, determinations that the actions taken in this matter by the 9th Medical Group Commander, and the 9th Reconnaissance Wing Commander were appropriate. Therefore, the Board recommends against correcting the applicant's records.

AR5 (citing the 2015 Shanahan and Director opinions at AR254, AR253). Shortly thereafter, the Executive Director of the Board affirmed the panel's vote, officially denying Plaintiff's application on June 17, 2019. AR1.

Annicelli then filed this suit. He asserts that the Board's final decision is arbitrary and capricious and lacks substantial evidence, in violation of the APA. *See* 5 U.S.C. § 706(2)(A). In particular, he asserts that the Board opinion—including the Advisory Opinions the Board "agree[d] with"—did not address all of his non-frivolous arguments. Compl. at 19–20, ECF No. 1. Annicelli requests the Court set aside the Board's opinion and remand the matter. *Id.* at 20. Both parties move for summary judgment. ECF Nos. 13 & 14.

### Legal Standards

The Court has jurisdiction over APA challenges based on the correction of military records. *See* 10 U.S.C. § 1552 (providing for the correction of records); 5 U.S.C. § 702 (granting a cause of action for review of agency action); 5 U.S.C. § 701(b)(1) (defining "agency" to include governmental authority of the United States and exempting other parts of the military not applicable here); 28 U.S.C. § 1331 (providing subject-matter jurisdiction).

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In an APA challenge, "summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *Bridgeport Hosp. v. Becerra*, 2022 WL 612658, at

*6 (D.D.C. Mar. 2, 2022) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006));

*see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2011).

The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A); *see Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014).  To pass this test, agency action must demonstrate reasoned decisionmaking, including grappling with substantial issues and recording the reasoning involved, not just mere conclusions.  *See Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005); *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1405, 1407 (D.C. Cir. 1995) (concluding that "[b]ecause the Board only listed the facts and stated its conclusions, but did not connect them in any rational way, the Board's decisions are arbitrary and capricious.").  Military corrections boards may meet their obligation to provide a "reasoned explanation" for their decisionmaking by referencing or incorporating the reasoning of an advisory opinion or other sources.  *Roberts v. United States*, 741 F.3d 152, 159 (D.C. Cir. 2014); *Havens v. Mabus*, 146 F. Supp. 3d 202, 216 (D.D.C. 2015).

Judicial review of Board decisions involves "an unusually deferential application of the 'arbitrary or capricious' standard."  *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  This is due to the Secretary's exceedingly broad statutory authority to act "when he considers it necessary to correct an error or remove an injustice."  *Id.* (quoting 10 U.S.C. § 1552(a)).  Because "'[j]udges are not given the task of running the [Air Force],' [the Court's] review asks only if the Board's decisionmaking 'process was *deficient*, not whether [its] decision

was *correct.*'"   *McKinney v. Wormuth*, 5 F.4th 42, 45–46 (D.C. Cir. 2021) (quoting *Kreis*, 866 F.2d at 1511) (some alterations original).[2]

Overall, the Board's decision need not be "a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the [Board's] path may reasonably be discerned.'"  *Dickson v. Sec'y of Defense,* 68 F.3d 1396, 1404 (D.C. Cir. 1995) (*quoting Bowman Transp., Inc. v. Arkansas–Best Motor Freight Sys.,* 419 U.S. 281 (1974)).  The Board's explanation must, however, "minimally contain 'a rational connection between the facts found and the choice made.'"  *Id.* (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).  Furthermore, the Board must respond to all non-frivolous arguments raised by the applicant.  *Frizelle v. Slater*, 111 F.3d 172, 174 (D.C. Cir. 1997) (remanding where the Board failed to address two arguments that were not "facially frivolous").

### Analysis

The government concedes, as it must, that the Board's opinion itself is sparse and relies heavily on the reasoning of the Advisory Opinions that it incorporates.  In fact, the Board "concur[red]" with the reasoning of the DP3SP Advisory Opinion and "agree[d]" with the Article

---

[2] The Parties suggest the Board's decision must also be supported by substantial evidence, but that standard only directly applies to formal adjudications and where required by statute.  5 U.S.C. § 706(2)(E); *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, 998 F.3d 999, 1005 (D.C. Cir. 2021); *McKinney*, 5 F.4th at 46.  Adjudications to correct a military record are so required by statute when the Board adjudicating the claim has been "designated as a special board by the Secretary." 10 U.S.C. § 1558(b)(1)(A) & (B); *id.* § 1558(f)(3)(B); *see also McKinney v. Wormuth*, 5 F.4th 42 (D.C. Cir. 2021).  The record does not support that this Board is so designated in this matter.  Regardless, the Court of Appeals has held that these standards overlap in their evidentiary requirements because substantial evidence must underlie reasoned decisions.  *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984).

138 Appeal Letters (Shanahan's and the Director's letters).  AR5.  As a result, the reasoning of those opinions is incorporated here as the Board's own reasoning, unless otherwise mentioned.

## I.      Arguments Addressed in the DP3SP Advisory Opinion.

The Board adopted the DP3SP Advisory Opinion.  The Parties address that Opinion in roughly paragraph-by-paragraph order, and so this opinion follows suit.

### a.  The Legal and Factual Sufficiency of the Commander-Directed Investigation (Paragraphs B[3] & D[4] of DP3SP).

Annicelli argues that the Board's Opinion is arbitrary and capricious because it failed to make a determination as to Annicelli's key complaint:  that Annicelli's Officer Performance

---

[3] Paragraph b of the DP3SP Advisory Opinion states in full:

> The applicant contends the Commander Directed Investigation (CDI) which labeled him as a "toxic leader" was fatally flawed and wrongly used to justify his permanent removal from command.  In the brief provided by the applicant it states, "the report's conclusions are based on limited evidence gathering and flawed analysis without context.  There are several examples within the brief in attempt to conclude the CDI was defective; however, in the 9 Medical Group Commander's response to the applicant's redress it states, "Irrespective to your criticism, the CDI substantiated what originally appeared to be toxic leadership and was assessed to be legally sufficient by the 9 RW/SJA."  We are unable to determine the legal sufficiency of the CDI, nor can we conclude the applicant's removal from command was arbitrary and capricious.

JA1388.

[4] Paragraph d of the DP3SP Advisory Opinion states in full:

> The applicant contends the OPR violates AFI 36-2406 1.12.7.1.1 which states, "raters must ensure that information relied upon to document performance, especially derogatory information relating to unsatisfactory behavior or misconduct is reliable and supported by substantial evidence."  The brief indicates that this paragraph was violated suggesting that the rater relied on a faulty CDI.  The brief states, "The CDI was so deficient that it deprived Col Ocker and Col Lee of information that was reliable and it did not provide substantial, credible evidence of abusive or toxic leadership . . ."  As previously stated, we are unable to determine if the legal sufficiency of the CDI.  Therefore, we are unable to conclude that the referral comment was false or was based on insufficient information.  It appears the rater adhered to para 1.12.7.1.1. in that the rater chose to document the substandard

Report was deficient because it relied on the Commander-Directed Investigation, which—he argued—was itself factually and legally insufficient. Pl. Mot. at 28–30. The Board addressed this argument, if at all, through its adoption of the DP3SP Advisory Opinion in paragraphs b and d. That Opinion noted that Ocker had concluded—in response to some different criticisms of the Officer Performance Report—"Irrespective to [Annicelli's] criticism[s of the OPR], the CDI substantiated what originally appeared to be toxic leadership and was assessed to be legally sufficient by the 9 RW/SJA." AR1388, AR304.[5]   Annicelli complains that the DP3SP Advisory Opinion (and therefore the Board) concluded "We are unable to determine the legal sufficiency of the CDI," and instead relied on Ocker's reference to an apparently unproduced analysis that Ocker described as being from the "9 RW/SJA," and that officer's conclusion about the legal sufficiency of the Commander-Directed Investigation. AR1388. This, to Annicelli, is a straightforward violation of the requirement for reasoned decisionmaking, including the principle that agencies must consider all important aspects of the problem. *See Calloway*, 366 F. Supp. 2d at 53; *see also* AFI 36-2603, para. 4.2.2.2 (requiring the Board consider "crux issues").

---

behavior based on the substantiated CDI. Moreover, the applicant has provided insufficient documentation to prove that the CDI was flawed.

JA1388.

[5] Ocker asserted that the "9 RW/SJA" analyzed the legal sufficiency of the Commander-Directed Investigation, but the government cites to no document containing the relevant analysis, nor does it appear such a document is in the administrative record.   While the record does suggest the 9 RW/SJA refers to Lieutenant Colonel Byron, AR282, the Court is not aware of where, if anywhere, his analysis of the legal sufficiency of the Investigation is in the administrative record. Annicelli asserts he was never provided any such document for review. Pl. Mot. at 29, n.8, ECF No. 14. The record does include a document showing Byron signed a form to appoint Annicelli's temporary replacement, and by signing he apparently concluded the temporary appointment was legally sufficient. JA137. But that is neither an indication of Byron's conclusion that the CDI was legally sufficient nor an explanation of his reasoning.

The government responds that the DP3SP Advisory Opinion did not fail to address Annicelli's arguments, but simply concluded that Annicelli "provided insufficient documentation to prove the [Commander-Directed Investigation] was flawed." AR1389. In the government's view, rather than declining to address the legal sufficiency of the Commander-Directed Investigation (and thereby the legitimacy of Ocker's comment in the Performance Report), the Opinion concluded that Annicelli had failed to meet his burden to show that the Commander-Directed Investigation was insufficient. The government argues this reading is bolstered by the Opinion's description of the investigation as a "*substantiated* CDI." AR1389.

But even if the Board had been correct to conclude that Annicelli had provided insufficient documentation to prove the Commander-Directed Investigation was flawed, its analysis is missing. Annicelli's application to the Board included a variety of arguments about flaws in the Commander-Directed Investigation, but the Board did not address any of those arguments; instead, it briefly noted Ocker's conclusions and then concluded that it could not assess the legal sufficiency of the Investigation. AR1389. The Court is left to guess why the Board made that conclusion. Did the Board believe it lacked authority to assess the factual or legal sufficiency of the Investigation? Did the Board believe it had the power to assess those questions, but that Annicelli simply didn't provide the right evidence? If so, what was missing? Or did the Board actually reweigh the Investigation's evidence and come to the same conclusion as Ocker, and just phrased its conclusion in an odd manner? If so, on what grounds did it disagree with Annicelli's arguments?

The Court's best guess is that, notwithstanding Annicelli's arguments, the Board gave dispositive weight to Ocker's analysis of the factual basis of the Commander-Directed Investigation and credited her characterization of the 9 RW/SJA assessment (whatever that was

exactly) as to the Investigation's legal sufficiency.  But even if this guess is correct (and the Board's decision doesn't make that clear), it is not apparent why the Board didn't conduct its own analysis of those questions.  There may be a simple, one-sentence explanation for *that*, but it's altogether lacking here, and the matter must therefore be remanded to the Board.

### b.  Vagueness of the Referral Officer Performance Report (Paragraph C of DP3SP Advisory Opinion) [6]

Annicelli also argues that the Board acted arbitrarily in adopting the DP3SP Advisory Opinion's conclusion that the Officer Performance Report[7] did not include impermissibly vague commentary.  Specifically, Annicelli argued that Ocker's comment ("Relieved of command; CDI substantiated toxic leadership; unhealthy org'l climate degraded unit effectiveness") violated AFI 36-2406, paragraph 1.10.2.1 which prohibits raters from making "non-specific and/or vague comments about the individual's behavior or performance."  AR29.  Annicelli asserted that the

---

[6] Paragraph c of the DP3SP Advisory Opinion states in full:

> The applicant is contesting his May 2015 OPR due to alleged errors and AFI violations.  The applicant contends the OPR violates AFI 36-2406 paras 1.8.4 and 1.10.2.1 as he believes the referral comment "fails to specifically detail the behavior or performance that caused the report to be referred."  Although there is not a definition for what is considered to be a vague comment, AFI 36-2406 para 1.10 provides examples of vague and specific comments.  The referral comment in the contested OPR states, "-Relieved of command; CDI substantiated toxic leadership; unhealthy org'l climate degraded unit effectiveness." This comment meets the AFI requirement as it states the applicant was reli[e]ved of command and explains the reason he was relieved as a result of a substantiated CDI.  Furthermore, the applicant was given the opportunity to refut[e] the comments and provide a rebuttal to the referral OPR.  The rebuttal was considered by the 9 Reconnaissance Wing Commander as stated in Section V of the contested OPR.

JA1388.

[7] Annicelli's opening brief appears to argue that it was the DP3SP Advisory Opinion itself which offered impermissibly vague commentary.  *See* Pl. Mot. at 31.  However, the argument in that motion and in the reply relates to the Report's commentary.  *See id.* at 30–31; Pl. Reply at 7–8.

comment was vague because it failed to provide any details about when, where, or what he did that qualified as "toxic leadership," nor is there any Air Force definition of that term. AR29–30. Annicelli argues here that the DP3SP Advisory Opinion—and therefore the Board—failed to meaningfully respond to the argument. *See Reeder v. James*, 121 F. Supp. 3d 1, 9–10 (D.D.C. 2015).

The government argues that the DP3SP Opinion directly addressed the argument in ¶ c. That Opinion stated "This comment meets the AFI requirement as it states the applicant was reli[e]ved of command and explains the reason he was relieved as a result of a substantiated CDI." AR1388. The government contends that this conclusion satisfies AFI36-2406 paragraph 1.10.2.1, and compares favorably to the regulation's cross-reference to examples of acceptable statements like, "Drove while intoxicated, received an Article 15" and "Failed to report to duty, received an LOR." *Id.* at 1.12.7.3.2, ECF No. 13-4 at 20.

The Court agrees with the government that the Board did not act arbitrarily or unreasonably in concluding that Ocker's comment is not impermissibly vague. Ocker explained that the problem was not any particular action by Annicelli but the overall effect of his leadership in the Squadron. And the Board considered Annicelli's argument and concluded Ocker's statement was not impermissibly vague.[8]

To be sure, neither the DP3SP Advisory Opinion nor the Board specifically addressed Annicelli's argument that "toxic leadership" does not have an official definition, but that, by itself,

---

[8] The parties seem to have contrary assumptions. Annicelli appears to have taken the OPR as a personal rebuke of his conduct and, naturally, would like an opportunity to refute any particular incident of misconduct. On the other hand, the Board appears to have been operating with the understanding that leadership failures can occur systemically, even without any particular incident of misconduct. In other words, leadership failures can result from an accumulation of otherwise innocuous decisions when combined with a particular environment. Both perspectives appear reasonable.

does not render the opinion unreasonable.  "Toxic leadership" is not a term of art but has a sufficiently plain meaning that an ordinary person would understand: actively harmful leadership. *See* Toxic, Merriam-Webster, https://www.merriam-webster.com/dictionary/toxic ("containing or being poisonous material especially when capable of causing death or serious debilitation"; "extremely harsh, malicious, or harmful").  This meaning is particularly clear when read in the context of the rest of the comment, namely that the toxic leadership was associated with an "unhealthy org'l climate [that] degraded unit effectiveness."  AR170.  Annicelli's argument that he was unable to respond to the Officer Performance Report because it did not define "toxic leadership" lacks merit, and thus the DP3SP Advisory Opinion was not unreasonable in ignoring that argument.

### c.  Lack of Feedback (Paragraph E of the DP3SP Advisory Opinion)[9]

Annicelli argues that the Board—through the DP3SP Advisory Opinion—failed to address a key argument: that Ocker's lack of feedback supported Annicelli's assertion that Ocker's

---

[9] Paragraph e of the DP3SP Advisory Opinion states in full:

> The applicant contends he did not receive a written performance feedback as required by the AFI.  The brief states, "while the lack of performance feedback does not, of itself, invalidate a subsequent OPR, it was Annicelli's performance as a squadron commander that was under scrutiny . . . . If Col Ocker has concerns about Annicelli's leadership she certainly should have provided written performance feedback.  Additionally, the failure to provide the required feedback in Dec 2014 suggests that Col Ocker was not keeping up with her responsibilities to provide leadership over the 9th PSPTS."  [Accomplishing] the performance feedback is a shared responsibility of both the rater and ratee as outlined in AFI 36-2406 para 2.2 and 2.2.2.  Moreover, para 2.2.1.3. states that the ratee will "notify the rater and, if necessary, the rater's rater when required or requested feedback did not take place.  Lack of counseling of feedback, by itself, is not a sufficient reason to challenge the accuracy or injustice of an evaluation."  Furthermore, a direct correlation between feedback sessions and performance assessments does not necessarily exists IAW para A2.5.8.  The applicant did not supply sufficient evidence to show that the lack of feedback directly resulted in an unfair or inaccurate evaluation.

statements and opinions were unfounded and a rush to judgment.  AR31–32.  Paragraph E of the DP3SP opinion, according to Annicelli, only addressed a different feedback issue that Annicelli does not now press:  that the Officer Performance Report was invalid because Ocker failed to provide feedback.

The government argues that the Advisory Opinion addresses Annicelli's argument in noting that "a direct correlation between feedback sessions and performance assessments does not necessarily exist[]" and that Annicelli "did not supply sufficient evidence to show that the lack of feedback directly resulted in an unfair or inaccurate evaluation."  AR1389.  And the government adds that Annicelli's argument is not really an argument about the Advisory Opinion's sufficiency, but a request to reweigh the evidence.

The Court agrees with the government.  The Board reasonably addressed Annicelli's argument when it concluded that he had not shown a correlation between feedback and performance assessments.  That is sufficient to defeat Annicelli's contention that lack of feedback invalidated the Officer Performance Report.  It was reasonable for the Board not to consider the issue further.  In any event, Annicelli's feedback argument, as presented, may have been better considered as evidence concerning the sufficiency of Ocker's evaluations rather than a separate argument that required its own response.  Nonetheless, the Board did address this piece of evidence, and there is certainly sufficient evidence in the record to support the Board's conclusion.

---

JA1389 (errors and ellipsis original).

### d. The Report's Consideration of Past Performance (Paragraph F of the DP3SD Advisory Opinion)[10]

Annicelli also argued below that the Officer Performance Report failed to reflect his record of superior duty performance.  AR32–33.  Annicelli's application cited his long career of receiving top marks in evaluations, including witness statements specifically acquired for the application.  *See* AR33.   The DP3SP Advisory Opinion noted that some of the evidence Annicelli marshaled was not reflected in the Officer Performance Report, but it concluded that Annicelli "has provided insufficient documentation that the OPR was completed inaccurately.   It appears the rater completed the OPR IAW AFI 36-2406, Table 3.1, Item 16."[11] AR1389.  Annicelli argues here that this determination is arbitrary and entirely conclusory because it merely parrots the language of the regulation rather that reasonably analyzing facts to reach the conclusions.  *See Amerijet Int'l v. Pistole*, 753 F.3d 1343, 1350 ("[C]onclusory statements will not do; an agency's statement must

---

[10] Paragraph f of the DP3SP Advisory Opinion states in full:

> The applicant contends the contested OPR fails to accurately reflect his superior duty performance in all areas, including leadership skills. The brief states, "Annicelli's 2015 OPR failed to properly credit him for his overall good leadership performance," and suggests that none of his significant accomplishments are reflected on the 2015 OPR. Although the applicant has provided documentation supporting some accomplishments that are not reflected on the OPR, he has provided insufficient documentation that the OPR was completed inaccurately. It appears the rater completed the OPR IAW AFI 36-2406, Table 3.1, Item 16.

JA1389.

[11] While the applicable version of the table does not appear in the record, Item 16 in the November 2016 version refers to the Last Performance Feedback Date.  This would be a non-sequitur, but if it refers to what the November 2016 version of the document titles Item 15, it would follow.  Item 15 is entitled the "Rater Overall Assessment" and includes instructions for how to include comments.   *See*   AFI   35-2406,   November   2016,   available   at https://www.mcmilitarylaw.com/documents/afi_36-2406.pdf.  Regardless, this interpretation was not pressed by the government.

be one of *reasoning*." (emphasis original) (quotation marks omitted)); *Xiaomi Corp. v. Dep't of Def.*, 2021 WL 950144, at *5 (D.D.C. Mar. 12, 2021).

The government argues that Annicelli's argument is a red herring: the inclusion or non-inclusion of his historical performance ratings is not relevant to the Officer Performance Report (or the sufficiency of the Investigation that predicated the Report).  And the Officer Performance Report certainly included enough evidence to reach its conclusions.

The Court agrees.  While its analysis is short, the Advisory Opinion contemplated the additional evidence that Annicelli provided and concluded that the Officer Performance Report was not completed inaccurately and so there was no error to correct.  Annicelli did not point (and has not pointed here) to any particular mandatory provision of the guidelines for Commander-Directed Investigations that was violated, and the Court concludes there was no error or injustice in the Officer Performance Report being focused on the particular period of conduct at issue.

### e. **Promotion Recommendation Form (Paragraph G of the Advisory Opinion)[12]**

Annicelli argues here that the Board never even addressed his arguments about the Promotion Recommendation Form in a meaningful way.  The Board opinion deferred entirely to

---

[12] Paragraph g of the DP3SP Advisory Opinion states in full:

> The applicant is requesting to replace the Promotion Recommendation Form (PRF) for board ID P0615B with a reaccomplished PRF reflecting an overall recommendation of "Definitely Promote".  AFI 36-2406 para 10.2.4.6 states "the Board will not approve nor consider requests to change an evaluator's rating or comments if the evaluator does not support the change."  Moreover, the applicant has not provided documentation from neither his Senior Rater nor Management Level Review (MLR) President supporting the promotion recommendation change from "Do Not Promote This Board" to "Definitely Promote" IAW para A2.6.2.4.

the DP3SP Advisory Opinion on this point; the Advisory Opinion rejected Annicelli's arguments on the basis of a regulation relating to a different "board" that are concededly inapplicable.

The government's sole response is that the error was harmless.  Gov't Reply at 17–20, ECF No. 16; *Jicarilla Apache Nation v. U.S. Dep't. of the Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010); *see also* 5 U.S.C. § 706 ("In making the foregoing determinations . . . due account shall be taken of the rule of prejudicial error.").  The government argues that the board referenced in the regulation—Evaluation Report Appeals Board—applies the same standard of review as the Board here.   That other Board "was established to provide all Air Force personnel with an avenue of relief for correcting *error or injustices* in evaluations at the lowest possible level."  AFI 36-2406 paragraph 10.1.1; ECF No. 14-6 at 8 (emphasis added).  The government argues this is the same standard that the Secretary—and therefore the Board here—applies in correcting military records. *See* 10 U.S.C. § 1552(a)(1) (the Secretary corrects records when he or she "considers it necessary to correct an error or remove an injustice.").  Furthermore, the government argues that the Promotion Recommendation Form—and Ocker's "Do Not Promote" recommendation—naturally followed from Annicelli's removal from command after the Commander-Directed Investigation substantiated that Annicelli was a toxic leader.  AR182; AR170; AR119.

The Court disagrees.  Even though the two sets of regulations have the same goal— correcting errors and injustices in military records—that does not mean they apply the same evidentiary standards.  Indeed, having the same standards for both boards may be odd because

---

Additionally, the applicant has not provided a substitute PRF reaccomplished by his Senior Rater IAW para 10.2.4.7.

JA1389.

ERAB is geared towards active servicemembers whereas the Board here corrects records of retired ones.

The Court cannot conclude the error was harmless.  To do so here would be to "pass on the correctness of the Board's decision," which *Kreis* holds is improper.  *McDonough v. Stackley*, 245 F. Supp. 3d 1, 8 (D.D.C. 2017) (citing *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)).  The government does rely on cases in which errors were considered harmless.  *See* Gov. Opp. at 17–20, ECF No. 16.  But those cases involved largely procedural mistakes in which there was no apparent effect on the ultimate decision or reasoning.  *See Coe v. McHugh*, 968 F. Supp. 2d 237, 243 n.2 (D.D.C. 2013) (granting summary judgment where the ABCMR's reliance on an outdated but identical version of a regulation was harmless); *Charlton v. Donley*, 846 F. Supp. 2d 76, 89 (D.D.C. 2012) (granting summary judgment for the Board because plaintiff failed to show how receiving two days notice before a hearing, rather than the required three, impacted his defense); *Selman v. United States*, 723 F.2d 877, 881 (Fed. Cir. 1983) (affirming dismissal of claims despite Secretary's failure to state reasons for denying promotion, where it can be inferred "he adopted the reasons urged upon him in opposition to the promotions.").  Here the government asks the Court to conclude that the Board—which denied Annicelli's claim on *procedural* grounds—would have come to the same conclusion if it had considered the question on *substantive* grounds.  That is squarely off-limits for this Court.  *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989).

To be sure, Annicelli's case does not appear particularly strong.  As the government argues here (and Annicelli does not rebut), it seems to follow that given the evidence of the loss of confidence in his leadership, it was neither an error nor an injustice for Annicelli not to be recommended for promotion soon thereafter.  Indeed, before the Board Annicelli did not provide

reasons to change the PRF independent from his arguments about the Officer Performance Report. *See* AR29–37.  But the Board's decision regarding the Officer Performance Report must be remanded, *see supra et infra*, and this one must be too.

## II.    Argument Not Addressed in the DP3SP Advisory Opinion.

Annicelli argued during the administrative process that, because his previous ratings were so inconsistent with the Officer Performance Report, the Board had independent grounds to grant relief.  AR34–35.  That is, Annicelli argued that even if the Officer Performance Report was otherwise valid, his long history of superior performance was another reason to grant relief.  In support of this position, Annicelli relied on two Board decisions in which relief was granted in similar circumstances.  AR34–35 (citing and discussing AFBCMR Dkt. Nos. 95-02759; 2005-03320).[13]

The Board does not appear to have addressed this argument, but the government argues that any error was harmless because Annicelli failed to develop the argument below.  To be sure, parties challenging administrative action in court must have made before the agency the "specific argument" they press in court.  *Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013); *Tindal v. McHugh*, 945 F. Supp. 2d 111, 130 (D.D.C. 2013); *see also* 32 C.F.R. § 865.4(a) ("The applicant has the burden of providing sufficient evidence of material error or injustice.").  The government argues that Annicelli failed to provide sufficient evidence of error or injustice because he failed to explain the two Board precedents in sufficient detail and Annicelli's reply to the Advisory Opinion included—at most—an oblique reference to the argument.  *See* Gov. Opp. at 21–22, ECF No. 16; *Tindal*, 945 F. Supp. 2d at 130 ("[T]he Board is not required to make a claimant's case for him or

---

[13] These Board decisions do not appear to be in the administrative record before the Court.

sift through the materials submitted by a claimant to discern whether any implied arguments are being made").

The Court disagrees:   Annicelli clearly raised the issue in his application.   His memorandum to the Board included a separately-headed section entitled "Annicelli's 2015 OPR is so starkly inconsistent with his performance ratings and awards before, and after, that eight month period from late June 2014 to February 2015, that its accuracy should be discounted and it should be removed from his records."  AR35–36; *see also* AR37 (emphasizing Annicelli's long career of superior performance).  This section presented the argument that because of his past performance, the Officer Performance Report should be removed from his record; it cited to relevant evidence and analogized to Board precedent.  While Annicelli did not make the argument in as much detail as possible, a fair reader would understand his argument, and the government has cited no Board rule or principle of administrative law requiring more.

But it is a closer call whether Annicelli's rebuttal to the Advisory Opinion maintained the argument.  *See* AR1395.  The only relevant section is Section F (which analyzes the DP3SP Advisory Opinion ¶ f), in which Annicelli complained that the Officer Performance Report was deficient because it failed to mention his superior ratings.  But that is not the same issue; the question here is whether his past performance provided an independent ground for removing the referral Officer Performance Report.  The closest the rebuttal gets is Section F's last sentence: "Furthermore, the advisory does not even address the claim that his one bad OPR is totally inconsistent with all his other outstanding OPRs."  AR1395.

While a close call, the Court concludes that this, in combination with the section in Annicelli's initial brief, was enough to put the Board on notice of this argument.  *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1290 (D.C. Cir. 2004) (to preserve a factual or legal

argument for judicial review, an agency must have been given a "fair opportunity" to entertain it). Annicelli made a non-frivolous argument that his lengthy career of decorated service provided an independent reason to overturn the Officer Performance Report.  To be sure, the Board may be able to distinguish or overturn its prior decisions, but that is a question for the Board in the first instance, not this Court.  And even if the Board concludes the precedent is inapplicable or non-binding, the Board would nonetheless have to address the argument that the Officer Performance Report is an injustice given Annicelli's career of superior performance.

### III.    The Article 138 Appeal Letters.

Annicelli argues that the Board's reference to the Article 138 denial letters—Shanahan's July 27, 2015 letter and the Director's November 16, 2015 letter—does not cure other defects in the Board's reasoning.  The letters are themselves devoid of reasoning and, he argues, do not answer the various arguments he made before the Board because they long predate his application to the Board and his arguments thereto.  Such arguments include the factual and legal sufficiency of the CDI guide, new evidence of favorable witness statements, and inconsistencies in the Investigation's witness statements that Annicelli noted and criticized.

The government appears to disagree.  The government first argues that the DP3SP Advisory Opinion adequately addressed Plaintiff's concerns, which, if true, make the Article 138 letters irrelevant.  Next, the government notes that, while the Article 138 denial letters did not directly respond to Annicelli's arguments before the Board, they did respond to Annicelli's general argument that the CDI was fatally flawed.  The government argues the Letters demonstrate Shanahan and the Director addressed Annicelli's arguments, and then the Board, after conducting its own review of the evidence, concurred in the Letters' conclusions.

To the extent the government contests Annicelli's argument, the position lacks merit. Neither of the Article 138 Letters contains anything of relevance more than conclusions, and neither addresses Annicelli's arguments made to the Board.  Shanahan's letter stated in relevant part:

> Your request for relief and additional investigation is denied.  I find that Colonel Ocker did not abuse her authority or act arbitrarily, capriciously, or unfairly in removing you as commander of the 9 PSPTS.  Based upon my review of the evidence, I find that Colonel Ocker acted reasonably in relieving you from command based on her loss in confidence in your ability to safely command the unit.  Furthermore, I find that you were not wronged by Colonel Lee because you were relieved from command by Colonel Ocker.

JA 254.  And the Director's letter stated in relevant part:

> By authority of the Secretary of the Air Force, I have reviewed all matters submitted by you in your request for redress filed under Article 138, Uniform Code of Military Justice (UCMJ), dated 22 June 2015.  I have determined that the actions taken in this matter by the Commander, 9th Medical Group [Ocker] and the Commander, 9th Reconnaissance Wing [Lee] were appropriate.  The denial of your request for redress is hereby sustained.

JA253.  The letters themselves do not discuss, let alone engage with, the various arguments Annicelli made to the Board.  And they contain no reasoning that is applicable to the shortcomings in the DP3SP Advisory Opinion discussed above.   The Board's reasoning is not bolstered by these Article 138 Letters, and they do not provide a separate basis to uphold the decision of the Board.

**Conclusion**

For the foregoing reasons, the Court concludes that the Board has not reasonably addressed certain parts of Annicelli's application.  The Court takes no view on whether Annicelli can or should prevail in his application, only that the Board must respond to his non-frivolous arguments.

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment, **GRANTS** Plaintiff's Cross-Motion for Summary Judgment, and **REMANDS** the matter to the Board.  An Order will issue contemporaneously with this memorandum opinion.


DATE:  March 30, 2022

CARL J. NICHOLS
United States District Judge